IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| CHRISTOPHER FLORES | § | |
| VS. | § | CIVIL ACTION NO. 1:25-CV-232 |
| TANOSHA HOLLYFIELD | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Christopher Flores, an inmate confined at the Stiles Unit of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Tanosha Hollyfield. The action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

The parties have filed Motions for Summary Judgment[1] (doc. #20 and doc. #23). This Report and Recommendation considers the merits of the Motions.

Factual Background

Plaintiff alleges he suffers from osteoarthritis in both knees and he has a Baker's cyst in his left knee. Plaintiff states that the conditions cause pain, stiffness, and swelling of his knees. Beginning in June of 2021, Plaintiff was treated with pain relievers, such as ibuprofen. Plaintiff also was given knee wraps, which he alleges were effective for managing his pain, but the knee wraps were confiscated after he was transferred to the Stiles Unit.

[1] Defendant's Motion for Summary Judgment was alternatively a Motion to Dismiss. Because Defendant presented information outside the pleadings, the undersigned will consider the filing as a Motion for Summary Judgment. *See* FED. R. CIV. P. 12(d).

Plaintiff claims that the Stiles Unit was placed on lockdown on April 11, 2023, but he was still escorted to the infirmary for a medical appointment later that morning. Plaintiff alleges that he saw Dr. Frank Saunders, who ordered knee wraps and issued Plaintiff a medical pass authorizing him to have possession of the knee wraps. Plaintiff saw Defendant Hollyfield, who he asserts is the Clinic Manager, walking out of the infirmary, and he asked her when he would receive his knee wraps. Defendant Hollyfield allegedly responded that she does not distribute medical supplies during a lockdown. When Plaintiff questioned Defendant Hollyfield about that response, she allegedly said, “We’ll see how long it takes you to get them now.”

The lockdown ended on May 1, 2023. Three days later, Plaintiff received a lay-in to pick up the medical wraps. Plaintiff was unable to pick up the knee wraps during the designated time, through no fault of his own. By the time he arrived at the infirmary, Defendant Hollyfield was no longer there.

Plaintiff claims that he sent I-60 Inmate Request to Official forms to Defendant Hollyfield and to Jacquelyn Womack, the Stiles Unit Practice Manager, but he did not receive a response. On May 18, 2023, Plaintiff filed a Step 1 grievance against Defendant Hollyfield for failing to give him the knee wraps. Plaintiff alleges he saw Defendant Hollyfield in passing several times during the summer of 2023, but she ignored his attempts to speak with her. In July, Plaintiff was able to speak with Defendant Hollyfield about the knee wraps. Defendant Hollyfield told Plaintiff that she had issued him a lay-in to pick up the knee wraps and that she assumed he did not want them since he did not show up to the appointment. Plaintiff explained that he missed the appointment through no fault of his own and that he desperately needed the knee wraps for his knee pain. Plaintiff asked if he could get the knee wraps. Defendant Hollyfield told Plaintiff to submit an I-60. Plaintiff states

that he sent I-60s to Defendant Hollyfield and Ms. Womack, but he was not given the knee wraps. On August 9, 2023, Plaintiff filed another Step 1 grievance against Defendant Hollyfield.

Plaintiff saw Dr. Saunders again during the summer of 2023. Plaintiff told Dr. Saunders that he had not received the knee wraps that Dr. Saunders previously ordered. Dr. Saunders allegedly told Plaintiff that he would send another email to Defendant Hollyfield asking her to issue the knee wraps. Plaintiff states that he finally received the knee wraps on October 23, 2023.

<u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff contends that the summary judgment evidence conclusively demonstrates that Defendant Hollyfield was deliberately indifferent to his serious medical needs by refusing to issue knee wraps that Plaintiff needed for pain management for six months.

<u>Defendant's Motion for Summary Judgment</u>

Defendant contends that Plaintiff's claim relies on "unsubstantiated assertions," and the evidence does not show that she possessed the subjective knowledge necessary to establish a claim of deliberate indifference to Plaintiff's serious medical needs. Defendant asserts that she is entitled to qualified immunity. Finally, Defendant contends that Plaintiff has not demonstrated that he is entitled to punitive damages.

<u>Standard of Review</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech. Marine & Offshore v. Int'l Shipping Partners*, 334 F.3d 423, 427 (5th

Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech.*, 334 F.3d at 427.

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991); *Jackson v. Procunier,* 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

## Analysis

Title 42 U.S.C. § 1983 creates a cause of action against any person who, while acting under color of state law, causes a person to be deprived of a federally-protected constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Phillips v. Monroe Cnty.*, 311 F.3d 369, 373 (5th Cir. 2002). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must allege two elements. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez*, 446 U.S. at 640.

*Qualified Immunity*

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to protect all officials, except those who are plainly incompetent or who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Federal courts use a two-part test to determine whether the defendants are entitled to qualified immunity. *Freeman v. Texas Dep't Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004). The first prong of the test requires the court to determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736; *Freeman*, 369 F.3d at 863. If a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. Clearly established rights should not be defined broadly. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The district court has discretion to decide which prong of the two-part test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiff's allegations meet the second prong of the test because it was clearly established at the time of the alleged violations that the defendant's failure to "follow a prescribed course of treatment" that causes the plaintiff to suffer pain rises to the level

of an Eighth Amendment violation. *Easter v. Powell*, 467 F.3d 459, 464-65 (5th Cir. 2006). Thus, the court must determine whether Plaintiff has alleged facts sufficient to state an Eighth Amendment claim against the defendant.

*Eighth Amendment*

Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components--one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, the plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). In the context of a medical claim, the plaintiff must shown that his medical need was serious. *Stevenson v. Tocé*, 113 F.4th 494, 502 (5th Cir. 2024). A medical need is serious if "treatment has been recommended, or the need for treatment if 'so apparent that even laymen would recognize' it." *Id.* (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006)). The plaintiff must also demonstrate that the defendants were deliberately indifferent to the risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the defendants were aware of an excessive risk

to plaintiff's health or safety, and consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534. A delay in medical treatment can rise to the level of an Eighth Amendment violation if the defendant was deliberately indifferent and the delay caused substantial harm. *Easter*, 467 F.3d at 463.

Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Plaintiff's medical records show that he was diagnosed with a Baker's cyst and issued knee sleeves on June 7, 2021, and a medical pass to possess the sleeves until June 7, 2022. (Doc. #20 at 20.) Plaintiff was re-issued knee supports on October 19, 2021, and his medical pass was extended until October 19, 2022. (Doc. #20 at 54.)

On March 28, 2023, Plaintiff sent an I-60 to the medical department requesting new knee sleeves because his old ones had been confiscated after his medical pass expired. (Doc. #20 at 24.) In the I-60, Plaintiff reported that his knees had been hurting "a lot and that the compression helped with the pain." (Doc. #20 at 24.) On April 11, 2023, Dr. Frank Saunders ordered replacement knee

sleeves for Plaintiff and issued a medical pass for 365 days. (Doc. #20 at 31.) Following the appointment, Dr. Saunders emailed Defendant to issue knee supports to Plaintiff to replace the confiscated ones. (Doc. #23-1 at 14.) On October 2, 2023, a different medical provider emailed "Diane Taylor M CCA" requesting her to provide a pair of elastic sleeves to Plaintiff. (Doc. #23-1 at 20.) On October 23, 2023, Defendant entered a note in Plaintiff's medical chart indicating that she had issued Plaintiff two large knee supports. (Doc. #20 at 52.)

Defendant claims that Plaintiff has not shown that his arthritis rose to the level of a serious medical need or that he had a medical need for the knee sleeves. Defendant argues that Plaintiff's need for treatment for arthritis pain was not so obvious that Defendant, who is not a medical provider, would realize that he needed the knee sleeves. In this instance, it did not matter whether it should have been obvious to a layperson that Plaintiff needed treatment because Dr. Saunders had already assessed Plaintiff's condition, ordered the knee sleeves, and instructed Defendant to provide them to Plaintiff. In an affidavit, Dr. Saunders states that: "Elastic knee sleeves, while potentially beneficial to provide compression support and pain relief for mild injuries, are not necessary for the treatment of a serious medical condition." (Doc. #23-1 at 5.) Nevertheless, there is evidence in the record that medical providers ordered the sleeves on multiple occasions, and that Plaintiff reported the sleeves helped with pain management of his arthritis and Baker's cyst. Whether the treatment was necessary is a genuine dispute of fact that is not capable of resolution on summary judgment.

Defendant alleges that the limited contact she had with Plaintiff is insufficient to show that she was deliberately indifferent to his serious medical needs. During their first encounter, Defendant stated that she did not distribute medical supplies during a lockdown. Dr. Saunders states that

Defendant's responsibility as a Correctional Clinical Associate[2] was to send a patient a lay-in and call the patient out at the scheduling time to pick up the medical supplies in accordance with security protocols. (Doc. #23-1 at 5.) There is nothing in the record showing that security protocols prevented Defendant from distributing medical supplies during a prison lockdown or otherwise explains the delay between April 11, 2023, when the sleeves were ordered, and the scheduled lay-in on May 4, 2023. Plaintiff spoke with Defendant in July about the sleeves, and she indicated that she did not think Plaintiff wanted the sleeves since he missed his appointment in May. After that discussion, Defendant was aware that Plaintiff did, in fact, want the sleeves to help with his knee pain. Instead of making arrangements to dispense the sleeves, she told Plaintiff to submit an I-60. Plaintiff asserts that he did send an I-60 to Defendant,[3] but he did not receive the sleeves until October 23, 2023. Although Defendant claims that Plaintiff did not suffer substantial harm during this delay, Plaintiff alleges that he suffered pain. Delayed treatment resulting in severe pain is sufficient to demonstrate substantial harm. *Easter*, 467 F.3d at 464. Whether the delay caused Plaintiff substantial harm in this instance is a genuine dispute of material fact.

The summary judgment evidence is sufficient to create a genuine dispute of material fact whether Defendant was aware of a serious risk of harm to Plaintiff's health and consciously disregarded the risk. Thus, Defendant is not entitled to qualified immunity. Because there are genuine issues of material fact, the parties' Motions for Summary Judgment should be denied.

---

[2] The exhibits show that Defendant's job description was identified as "Med Aide" on April 11, 2023, when she was first directed to dispense the knee sleeves to Plaintiff. (Doc. #23-1 at 14.) It is unclear how that role differs, if at all, from the Correctional Clinic Aid position that Defendant held on October 23, 2023. (Doc. #20 at 52.)

[3] Plaintiff submitted an I-60 he directed to Jacquelyn Womack about the sleeves on September 18, 2023, but he did not submit any I-60 forms he directed to Defendant during this time period.

*Punitive Damages*

Punitive damages may be awarded if a defendant's conduct was motivated by evil intent or showed reckless or callous indifference. *Holmes v. Reddoch*, 117 F.4th 309, 320 (5th Cir. 2024). Defendant contends that Plaintiff has not demonstrated the state of mind necessary to support a claim for punitive damages. There is evidence in the record that Defendant told Plaintiff, "We'll see how long it takes you to get them now" after he questioned why she would not give him the knee sleeves during a lockdown, and then he did not receive the sleeves for six months despite multiple requests. The record is sufficient at this stage to raise a genuine dispute as to whether the defendant's conduct was motivated by evil intent or showed reckless or callous indifference.

## Recommendation

The parties' Motions for Summary Judgment should be denied.

## Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). Objections may not exceed eight pages without leave of court.

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United*

*Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 21st day of August, 2026.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE